UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

CHERYL LOUISE SHERMAN,  Case no. 21-11067-t13

    Debtor.

## OPINION

    Debtor objected to her home mortgage lender's proof of claim, arguing that the prepetition expenses are excessive and are improperly itemized. The lender responded that its expenses are itemized as required by the bankruptcy rules and are high because of Debtor's twelve-year payment default and repeated bankruptcy filings. After reviewing the lender's proof of claim, the dockets in this and Debtor's prior cases, and the claim objection and response, the Court concludes that Debtor's objection should be overruled. However, if Debtor wishes to take discovery on the reasonableness of some of the prepetition expenses, with the view of presenting evidence in support of her objection at a final, evidentiary hearing on the claim objection, she may do so.

A.    Facts.[1]

    Debtor owns a house at 2109 Stanford Drive SE, Albuquerque, NM, 87106. On November 21, 2003, she signed a promissory note for $116,025, secured by a first mortgage on the house. Wells Fargo Bank, N.A., as trustee,[2] holds the note and owns the mortgage. Debtor went into payment default on the note and mortgage in July 2009 and has remained in default since. She made her last mortgage payment in June 2011.

---

[1] The Court takes judicial notice of its docket in this case and Debtor's other cases filed in this district. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may sua sponte take judicial notice of its docket).

[2] Wells Fargo is the trustee for Lehman Trust Mortgage Pass-Through Certificates, Series 2007-5. Thus, the note and mortgage are in a pool of mortgage-backed securities serviced by Wells Fargo as trustee.

Debtor filed this case on September 13, 2021. It is her fifth bankruptcy case in this Court.[3] Debtor received a discharge in her first two cases (no asset chapter 7s) on July 16, 1997, and June 22, 2009. Debtor's third case, filed as a chapter 13, was converted to chapter 7 and closed without a discharge on July 15, 2019. Debtor's fourth case, also filed under chapter 13, likewise was converted to chapter 7. It was dismissed on February 26, 2021, because Debtor did not appear at the § 341 meeting for her converted case.

Debtor's three most recent bankruptcy petition dates correlate with scheduled foreclosure sales. Wells Fargo scheduled a foreclosure sale of Debtor's house for April 5, 2018. Debtor filed her first chapter 13 case on March 12, 2018. Wells Fargo rescheduled the foreclosure sale for March 26, 2020. Debtor filed her second chapter 13 case a week before the sale. Finally, Wells Fargo scheduled a third foreclosure sale for September 16, 2021. Debtor filed this case three days before the scheduled sale.

A review of Debtor's bankruptcy schedules filed over the years indicates that Debtor lost her job in 2008 and has not worked since, living on unemployment insurance, social security, and money given to her by her mother and other family members. While Debtor's monthly expenses are extremely modest, her post-2008 income has not been enough to pay both her mortgage and her living expenses. As a consequence, Debtor stopped paying her mortgage. This problem may have been substantially alleviated by a recent inheritance. *See* doc. 16, p. 4 (amended schedule A/B, part 1.2), filed September 22, 2021.

On October 18, 2021, Wells Fargo filed a secured proof of claim for $224,386.92. The claim is 39 pages long. It includes a 10-page loan payment history (the "Payment History"); a three page history of the escrow account; and copies of the note, mortgages, and allonges.

---

[3] The other four cases were: 97-12027-m7, filed April 8, 1997; 09-10976-m7, filed March 12, 2009; 18-10752-j7, filed March 28, 2018; and 20-10608-j7, filed March 19, 2020.

The Payment History begins in July 2009, the first month of default.[4] The payment history includes dates, funds received, expenses incurred, and categorical descriptions of all expenses. $31,015.99 of the claim is for prepetition fees, costs, and other out-of-pocket expenses (the "Prepetition Expenses").

In her claim objection Debtor argues:

> 5. $31,015,99 in prepetition fees due is excessive and Creditor has not provided a detailed description of what these fees are.
>     a. In the attachment to the POC, Creditor lists the fees in several broad categories which include no description. These include, inter alia, Foreclosure Fees in the amount of $15,634.25 and Filing Costs in the amount of $2,626.81.
>     b. Creditor is further charging excessive amounts for certain services. These include, inter alia, POC Costs of $1,484.55, MFR Fees of $6,075.00, Sheriff's Costs of $1,455.17 and a Certified Mail charge of $294.25.
>     c. Additionally, Creditor includes expenses for Tax Liens totaling of $584.33. A search of Eagleweb shows that there has never been a tax lien on the property and there is no description of what these charges actually are for.
>     d. Further, Creditor includes expenses for 76 property inspections. Some performed within days of each other. No description has been given of the need for these inspections. Averaging $15 each, these expenses total $1,140.00.
> 5 [sic]. The broad categories used by Creditor cannot be considered to be an itemization of the expenses and fees incurred as required by Rule 3001(c)(2)(A).

At the preliminary hearing on the claim objection, the parties asked the Court to rule on the objection without an evidentiary hearing. No evidence other than judicial notice of the docket(s) was offered or agreed upon.

B.     <u>Proofs of Claim in General</u>.

A "proof of claim" is "a written statement setting forth a creditor's claim." *In re Zubair*, 2021 WL 4974811, at *8 (Bankr. S.D.N.Y.), citing Fed. R. Bankr. P. ("Rule")3001(a).

A properly filed proof of claim "constitute[s] prima facie evidence of the validity and amount of the claim." Rule 3001(f); *see also In re Penaran*, 424 B.R. 868, 875 (Bankr. D. Kan.

---

[4] The first default occurred almost immediately after Debtor received her second chapter 7 discharge (June 22, 2009).

2010) (a rebuttable presumption of the claim's validity arises upon filing); *In re Cavanaugh*, 2021 WL 471426, at *4 (Bankr. D.N.M.) (quoting *Penaran*).

C.  Proofs of Claim for Claims Secured by Debtor's Principal Residence.

When a creditor includes interest, fees, expenses, or other charges in its claim, it must include an itemized statement of the charges. Rule 3001(c)(2)(A). "If a security interest is claimed in property that is the debtor's principal residence, the attachment prescribed by the appropriate Official Form shall be filed with the proof of claim." Rule 3001(c)(2)(C).

Discussing a proof of claim for a home mortgage, the *Zubair* court stated: "To be valid, a proof of claim must:

> '[C]onform substantially to the appropriate Official Form,' Fed. R. Bankr. P. 3001(a); include 'an itemized statement of the interest, fees, expenses, or charges' included within the claim total, Fed. R. Bankr. P. 3001(c)(2)(A); attach a copy of the writing that secures the claim (if applicable), Fed. R. Bankr. P. 3001(c)(1); include 'the attachment prescribed by the appropriate Official Form' if the security interest is the debtor's principal residence, Fed. R. Bankr. P. 3001(c)(2)(C); and provide 'evidence that the security interest has been perfected,' Fed. R. Bankr. P. 3001(d)."

2021 WL 4974811, at *8, quoting *In re Wilson*, 532 B.R. 486, 490 (S.D.N.Y. 2015).

Generally, a creditor is entitled to an evidentiary presumption of prima facie validity when its itemization "reflect[s] separate categories and subtotals for principal, interest, charges, and collection costs in its proof of claim." *In re Cavanaugh*, 2021 WL 471426 at *4 n. 4 (Bankr. D.N.M.). In *In re Snow*, 603 B.R. 114, 120 (Bankr. W.D. Okla. 2019), the bankruptcy court held the creditor sufficiently itemized its prepetition expenses, reasoning:

> ("(Creditor) broke down its total claim into principal, interest, charges, and collection costs, and gave the subtotal for each category. From this information, debtor was able to determine what portion of the claim to object to, and how to frame her objection. As a result, the Court chooses not to exercise its discretion to impose a remedy under Rule 3001(c)(2)(D), and concludes that (Creditor's) proof of claim was filed in accordance with Rule 3001, thereby entitling (Creditor) to the presumption of prima facie evidence of the validity and amount of its claim.").

603 B.R. at 120, quoting *In re Kennedy*, 568 B.R. 367, 372-73 (Bankr. D. Kan. 2017).

D.      Claim Objections.

A timely filed proof of claim is deemed allowed unless a party in interest objects. § 502(a).[5] Once an objection to a claim is filed, after notice and a hearing, the Court must determine the amount of the allowed claim, if any, as of the petition date. § 502(b).

> A claimant's failure to comply with Rule 3001(c)(2)(A) or Official Form 10, however, is not by itself a reason to disallow a claim. Section 502(b) enumerates the grounds on which a proof of claim may be disallowed, and non-compliance with Rule 3001 is not one of them. The bankruptcy court has authority to sanction a creditor who fails to submit supporting information as directed by the rules of procedure. Fed. R. Bankr. P. 3001(c)(2)(D). But a failure to itemize interest in accordance with the rules means only that the proof of claim is not *prima facie* evidence of the claim's validity and amount. *Accord In re Dove-Nation*, 318 B.R. 147, 152 (8th Cir. BAP 2004); *In re Brunson*, 486 B.R. 759, 769-70, 772-73 (Bankr. N.D. Tex. 2013); *In re MacFarland*, 462 B.R. 857, 879-81 (Bankr. S.D. Fla. 2011).

*In re Sears*, 863 F.3d 973, 979 (8th Cir. 2017).

The burden of proof in a claim objection is a shifting one. "The objecting party has the burden of going forward with evidence supporting the objection." *In re Geneva Steel Co.*, 260 B.R. 517, 524 (10th Cir. BAP 2001), *aff'd*, 281 F.3d 1173 (10th Cir. 2002). "Such evidence must be of probative force equal to that of the allegations contained in the proof of claim." *Id.* Once the objecting party raises a sufficient legal or factual basis to question the validity or amount of the creditor's claim, the creditor must justify the allowance of its claim. *Geneva Steel*, 260 B.R. at 524 ("Once the objecting party has reached this threshold, the creditor has the ultimate burden of persuasion as to the validity and amount of the claim.") (citing *In re Harrison*, 987 F.2d 677, 680 (10th Cir. 1993)).

E.      Wells Fargo's Proof of Claim.

---

[5] Unless otherwise noticed, all statutory references are to 11 U.S.C.

For its Payment History, Wells Fargo used Official Form B410A (Proof of Claim, Attachment A), as required by Rule 3001(c)(2)(C). The Payment History has 17 columns and about 450 lines, organized by date from July 1, 2009 through September 13, 2021. It includes columns for: date; contractual payment amount; funds received; amount incurred; description; and contractual due date.

In the Payment History, the Prepetition Expenses are itemized in the "Description" column and are broken down into categories of expenses. The main categories are:

- Property inspections;
- Filing costs;
- Foreclosure fees;
- MFR fees;
- POC costs;
- Certified mail;
- Publication costs;
- Tax liens; and
- Sheriff costs.

F. <u>Debtor's Objection That Wells Fargo Did Not Itemize its Expenses Properly</u>.

Debtor argues that "Creditor has not provided a detailed description of what [its] fees are," and that "[t]he broad categories used by Creditor cannot be considered to be an itemization of the expenses and fees incurred as required by Rule 3001(c)(2)(A)." These arguments must be overruled. Even with 10 pages and 450 lines of very small font, the Payment History does not contain all the information a debtor might like to have about expenses. It does, however, satisfy the "itemized statement" requirement of the Rule. Payment histories attached to proofs of claim

cannot be expected to include comprehensive information such as, for example, the kind of detail found in a fee application. Rather, the expense itemization required by the Rule and the official form it is intended to give debtors and other parties in interest enough information to determine whether to "dig deeper" and get more information about any itemized expenses.

Furthermore, neither Rule 3001(c)(2)(A) nor the official form tells creditors how to categorize or describe the itemized expenses, suggesting an inherent degree of discretion. Wells Fargo used nine categories of expenses. Would seven categories have been enough? Or should Wells Fargo have expanded the list to twelve categories? By requiring merely an "itemized statement," the drafters declined to dictate such minutia.

One could quibble about some of Wells Fargo's expense categories. For example, what does the category "tax liens" signify? Debtor claims there never were any tax liens. Are the charges to search for tax liens? In another example, are "foreclosure fees" simply attorney fees or do they include other expenses? As discussed below, Debtor can explore these questions through discovery if she chooses.

Nevertheless, "the perfect is the enemy of the good." *Voltaire*, *Dictionnaire philosophique*. (1770). The Court holds that Wells Fargo's itemization and expense categories are more than sufficient to comply with the applicable Rules and forms.

G.      Reasonableness of Wells Fargo's Prepetition Expenses.

Debtor also asserts that the following expenses are unreasonable:

| Expense | Amount |
|---|---|
| Foreclosure fees | $15,634.25 |
| Filing costs | $2,626.81 |
| POC costs | $1,484.55 |
| MFR fees | $6,075.00 |
| Sheriff's costs | $1,455.17 |
| Certified mail charges | $294.25 |
| Tax liens | $584.33 |

| Property Inspection fees[6] | $1,140 |
| Total | $29,294.36 |

Debtor did not present evidence in support of her argument that some of the fees are unreasonable or excessive. Because of that, her reasonableness objection must be overruled. *Geneva Steel*, 260 B.R. at 524.

It could be that evidence obtained in discovery and presented at a final hearing would reveal that some of the Prepetition Expenses are unreasonable and should be disallowed. For example, the Court notes that in case no 18-10752, Wells Fargo filed a motion for relief from stay that was denied without prejudice because it was brought under the wrong name. *See In re Sherman*, 600 B.R. 453, 455 (Bankr. D.N.M. 2019). Possibly, fees charged for that work are part of the Prepetition Expenses and are not allowable. The Court does not rule on that issue, however, in part because there is no evidence that the fees are included in the Prepetition Expenses.

On the other hand, Debtor has been in default for more than 12 years. A significant, multi-year payment default inevitably increases a mortgagee's costs. Wells Fargo's property inspections began in November 2009 and were conducted about once every two months or so thereafter. The first entry related to foreclosure dates back to 2012.

Further, this is Debtor's fourth bankruptcy case involving Wells Fargo's note and mortgage. In the three most recent cases, Wells Fargo was either Debtor's largest or only creditor. In the 2018 bankruptcy, only Wells Fargo and MWA Bank filed proofs of claim.[7] In the 2020 bankruptcy, Wells Fargo was Debtor's only creditor. Likewise, in Debtor's current bankruptcy case, Wells Fargo was the only creditor to file a claim.

---

[6] There have been 76 property inspections during the 150 months of default, each costing between $12-$15.63. The Court assumes that these are "drive-by" inspections of the house to make sure it is being properly maintained, but does not know that for sure.

[7] New Mexico Taxation and Revenue Department also filed a claim, for $500, but later amended it to $0.

In short, with more than ten years of payment default, four bankruptcy cases, and three scheduled and stayed foreclosure sales, Wells Fargo was forced to incur substantial expenses.

E.  Discovery.

A claim objection is a "contested matter" as that term is used in Rule 9014. *See, e.g., In re Taylor*, 132 F.3d 256, 260 (5th Cir. 1998) ("An objection to a proof of claim serves to initiate a contested matter"); *In re Davenport*, 544 B.R. 245, 251 (Bankr. D.D.C. 2015) (citing *Taylor*); *In re Micro-Precision Technologies, Inc.*, 303 B.R. 238, 243 (Bankr. D.N.H. 2003) ("an objection to claim is a contested matter"); *In re Rockefeller Center Properties*, 272 B.R. 524, 540 (Bankr. S.D.N.Y 2000) ("When an objection to a claim is contested, a contested matter is created.").

Rule 9014 provides that the discovery rules (Rules 7028-7037) apply to contested matters "unless the [c]ourt directs otherwise." *See also In re Davenport*, 544 B.R. at 251 ("The provisions for formal litigation discovery apply in a contested matter . . ."). Thus, the default rule is that discovery is available in a claim objection. *Davenport*, 544 B.R. at 251 ("Therefore, a debtor seeking more information from a creditor respecting its proof of claim may take depositions orally or by written questions, serve interrogatories, requests for production, and requests for admission.").

In this case, Debtor would be entitled to discovery regarding, for example, Wells Fargo's foreclosure fees, MFR fees, POC costs, property inspections, and tax lien charges. If discovery revealed charges that Debtor believes are unreasonable, she could pursue her objection.

## Conclusion

It is not clear to the Court whether Debtor wishes to pursue her objection to the reasonableness of some of the Prepetition Expenses. If she does, she is entitled to take discovery

on all questioned expense categories. Debtor is also entitled to an explanation about the charges for property inspections, tax liens, and other charges not sufficiently self-explanatory.

The Court will not enter a final order on the claim objection at this time, but instead will hold a continued preliminary hearing on March 8, 2022, at 9:00 a.m., at which time the Court will hear from Debtor about whether and/or how she wishes to proceed.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: March 1, 2022

Copies to: counsel of record